**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
  anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIAN DARROW, on behalf of herself and those similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| CONCEPT LABORATORIES, INC. d/b/a ADVANCED CLINICALS, | |
| Defendant. | |

Plaintiff Lian Darrow brings this action on behalf of herself and all others similarly situated against Concept Laboratories, Inc. d/b/a Advanced Clinicals ("Advanced Clinicals" or "Defendant"). Plaintiff's allegations against Defendant are based upon information and belief and upon investigation of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge.

## I.    INTRODUCTION

1.    Advanced Clinicals claims to be "a problem solving beauty brand that stands behind high-quality ingredients and advanced, scientific delivery systems." It further contends: "all our products are formulated in our own lab and manufactured on-site in our Chicago facility, which means that not only can we ensure the highest levels of product standards" and "[our] advanced formulations have been developed by chemists to help our customers see and feel results within weeks."

2.    This case is about Advanced Clinicals' Hyaluronic Acid product line. Advanced Clinicals is a large company that sells products that it claims contain "professional grade" hyaluronic acid, which Defendant states "attracts 1,000x its weight in moisture." For example, Defendant claims on the front label of each container of its "Hyaluronic Acid Cream" product, which it advertises as "HYALURONIC ACID" and "INSTANT SKIN HYDRATOR," that the product contains "Professional-grade Hyaluronic Acid" that "[a]ttracts 1000x Its Weight in Moisture."

3.    On its website, Defendant similarly represents the following: "Hyaluronic Acid is a humectant, which is a fancy word for an ingredient that helps lock in moisture."; "With that said, our hydrating cream attracts 1,000 times its weight in moisture!"; and "Increase the water retention in your skin to reduce the appearance of wrinkles and fine lines for a flawless complexion."

4.    Defendant uses similar claims to sell all of its Hyaluronic Acid products. For example, regarding its Hyaluronic & Aloe Facial Mist and Hydro-Boost Toner with Hyaluronic Acid + Aloe Vera products, Defendant represents: "Hyaluronic Acid is essential to hydration, holding 1,000 times its weight in water."

5.      Defendant's representations are false. Hyaluronic acid is incapable of absorbing or holding any significant amount of water/moisture, much less anywhere near 1,000 times its weight in water/moisture. Nor will hyaluronic acid, or the products, lock in moisture.

## II.   PARTIES

6.      Plaintiff Lian Darrow is, and was at all relevant times, an individual and resident of California. Ms. Darrow resides in Alameda, California.

7.      Defendant Concept Laboratories, Inc. d/b/a Advanced Clinicals is an Illinois corporation with its principal place of business in Chicago, Illinois.

## III.   JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiff and Defendant are citizens of other states.

9.      The injuries, damages, and/or harm upon which this action is based, occurred and arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products sold to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of California, including within this District.

11.      In accordance with California Civil Code Section 1780(d), Plaintiff Lian Darrow concurrently files herewith a declaration establishing that she purchased Advanced Clinical's "Hyaluronic Acid Instant Skin Hydrator" moisturizer. She purchased the Hyaluronic Acid Instant Skin Hydrator at a Walgreens store in Alameda, California in late 2020. (Plaintiff Darrow's declaration is attached hereto as Exhibit A.)

12.      Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

IV.    **SUBSTANTIVE ALLEGATIONS**

13.    The market for cosmetics is fiercely competitive. Cosmetics manufacturers continually attempt to gain market share by touting the latest ingredients in their products and marketing them as being capable of improving consumers' appearance.

14.    Even in an industry known for hype, Defendant's outrageous marketing practices stand out among those of its competitors. As discussed below, Defendant's claims about its skin care products are not just hype; rather, they are demonstrably false.

15.    Under the brand name "Advanced Clinicals," Defendant markets, advertises, and sells products such as body scrubs, face cleansers, hair treatments, creams & lotions, serums & oils, toners & mists, face masks, and face, body, and foot care products to consumers. Defendant sell its products via third party retailer partners and on Defendant's proprietary website, www.advancedclinicals.com (the "Website").

16.    Defendant understands that consumers are concerned about looking youthful, reducing the appearance of wrinkles and fine lines on their faces, and maintaining healthy, clear, supple skin. Defendant knows that consumers are therefore willing to pay more for products that promise to make them look younger, keep their skin healthy, and reverse the signs of aging.

17.    Accordingly, Defendant has embarked on a long-term advertising campaign to trick consumers into believing that many of its products contain cutting-edge scientific technologies that will offer younger, healthier skin, when Defendant knows that its claims are false and misleading to reasonable consumers.

**A.    Defendant Make False and Misleading Claims about Its "Hyaluronic Acid" Line of Products.**

18.    Defendant sells various products as part of its Hyaluronic Acid line. These products include, without limitation:

      a.  Hyaluronic Acid Instant Skin Hydrator a/k/a Hyaluronic Acid Cream;

      b.  1000x Boost Hyaluronic Extra Dry Skin Gel Face Cream;

      c.  Hyaluronic Acid + Aloe Vera Toner; and

      d.  Hyaluronic + Aloe Facial Mist.

(Collectively, the "Hyaluronic Acid Products" or the "Products").

> ***1)      Defendant Falsely Represents to Consumers that the Hyaluronic Acid Products Moisturize Skin by Attracting and Retaining Up to 1000 times the Hyaluronic Acid's Weight in Moisture.***

19.     Throughout the class period, Defendant has made false and misleading representations to trick consumers into believing that the Hyaluronic Acid Products contain unique moisturizing properties. Specifically, Defendant falsely represents that, because of the presence of Hyaluronic Acid in the Products, the Products are capable of attracting and retaining large quantities of moisture, presumably from the atmosphere into the user's skin, for long-lasting benefits. As explained below, however, these representations are false and misleading.

20.     For example, throughout the class period, the packaging for the Hyaluronic Acid Instant Skin Hydrator states that the product contains "professional-grade hyaluronic acid"; "attracts 1,000 X its weight in moisture"; and "Restores volume to sagging skin."

21.     The front label for the Hyaluronic Acid Instant Skin Hydrator is shown below. The label suggests the presence of Hyaluronic Acid is important by placing it in large font in a bright purple color block on the label.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20    22.    The packaging further states, in bold purple font, on the front, that the Hyaluronic

21  Acid is an "INSTANT SKIN HYDRATOR," and, in bulleted language, each of the following:

22         •    "Professional-grade Hyaluronic Acid;"

23         •    "Attracts 1,000 X its weight in moisture;" and

24         •    "Restores volume to sagging skin."

25    23.    The Website makes the exact same (above) representations. It also make other

26  false representations, including the following: "Hyaluronic Acid is a humectant, which is a fancy

27  word for an ingredient that helps lock in moisture."; "With that said, our hydrating cream attracts

28  1,000 times its weight in moisture!"; "Increase the water retention in your skin to reduce the

appearance of wrinkles and fine lines for a flawless complexion."; and "Hyaluronic Acid is essential to hydration, holding 1,000 times its weight in water." In addition to prominently featuring photographs of the Hyaluronic Acid Products' containers, the Website contains descriptions of the Products that mirror the false and deceptive representations on the packages.

24.     The representations that Defendant makes on the Hyaluronic Acid Products' boxes and containers are viewed by consumers who shop for the Products, regardless of whether they shop at retail stores or online. Each of Defendant's retail partners make the containers available for consumers to view as they shop.

25.     While the above images are for Advanced Clinicals' Hyaluronic Acid Instant Skin Hydrator face cream, Advanced Clinicals makes substantially similar claims for its other Hyaluronic Acid Products. In particular, the false claim that hyaluronic acid "attracts 1,000 X its weight in moisture" or holds "1,000 times its weight in water," appears on all the labels, packaging, Website and/or other advertising materials for all of the Hyaluronic Acid Products. Defendant uses these claims to promise exceptional results by implying that hyaluronic acid's ability to attract and/or hold 1,000 times its weight in water will "lock in moisture" to prevent sagging skin and reduce the appearance of lines and wrinkles.

### 2)     Defendant' Representations Regarding the Hyaluronic Acid Products Are False.

26.     Defendant's representations regarding the Hyaluronic Acid Products are false and misleading.

27.     Defendant represents that the hyaluronic acid in the Hyaluronic Acid Products can attract 1,000 times its weight in moisture/water. That representation is false. Hyaluronic acid is incapable of absorbing anywhere near 1,000 times its weight in moisture/water, even when it is in its anhydrous (i.e., waterless; completely dry) form.

28.     Hyaluronic acid is the most capable of absorbing moisture when it is in its anhydrous form, but the hyaluronic acid contained in the Hyaluronic Acid Products is already saturated with water. Indeed, the first ingredient in most, if not all, of the Products is water. Because the hyaluronic acid contained in these Products is already water-saturated, it is incapable

of absorbing any additional water or moisture at all, let alone "attract[ing] 1000 X its weight in moisture" or "hold[ing] 1,000 times its weight in water" as Defendant claims.

29.     Further, even were Hyaluronic Acid Products capable of absorbing additional moisture when applied to a consumers' body—an assumption that is unwarranted—Defendant's representation that hyaluronic acid is ever capable of absorbing up to 1,000 times its weight in moisture/water is also false. In fact, hyaluronic acid has no particular ability to attract, hold or retain moisture/water compared to other common compounds, much less to "attract 1000 X its weight in moisture" or "hold 1,000 times its weight in water," or act as an "instant skin hydrator," or "restore volume to sagging skin."

30.     Hyaluronic acid is a polymer comprised of a repeating subunit. That subunit is modest in size. It is not capable of strongly binding moisture. It can form weak associations with water via hydrogen bonding, but only has 12 or so nitrogen and oxygen molecules that are capable of forming hydrogen bonds with water. Assembling copies of that monomer into a polymer does not significantly increase hyaluronic acid's ability to attract or retain water.

31.     Defendant's advertising suggests both that a single monomer of hyaluronic acid binds 22,389 water molecules, and that a single polymer 30,000 subunits long binds over 671 million water molecules. Given that each monomer of hyaluronic acid has only 12 or so hydrogen bonding sites, and no other mechanism for attracting or binding water, the assertion that hyaluronic acid can attract and retain over 22,389 water molecules per monomer of hyaluronic acid is clearly false.

32.     Actual scientific measurements confirm that this claim is false. Published data from studies by chemists prove that hyaluronic acid attracts and retains only a fraction of its weight in water from the atmosphere. At least eight labs have reported that hyaluronic acid binds a small amount of water, equivalent to about half the weight of the hyaluronic acid, or between 9 and 19 water molecules, with an average value of 14 ($\pm$5) water molecules. These include, in chronological order: A. Davies, *et al.*, "A study of factors influencing hydration of sodium hyaluronate from compressibility and high-precision densimetric measurements, Biochem." J. 1983, 213, 363-9; N. Jouon, et al. Hydration of hyaluronic acid as a function of the counterion

CLASS ACTION COMPLAINT

type and relative humidity, Carbohydrate Polymers, 1995, 26, 69-73; K. Haxaire, *et al.*, Hydration of hyaluronan polysaccharide observed by IR spectrometry. II. Definition and quantitative analysis of elementary hydration spectra and water uptake, Biopolymers, 2003, 72, 149-161; T. Mlčoch, *et al.*, Hydration and drying of various polysaccharides studied using DSC. J. Therm. Anal. Calorim. 2013, 113, 1177; M. Milas et al., Characterization and Properties of Hyaluronic Acid (Hyaluranon), Ch. 22, Polysaccharides: Structural Diversity and Functional Versatility (2d Ed., Marcel Dekket, S. Dimitriu, 2004); Yoshida, H. *et al.*, Characterization of water in polysaccharide hydrogels by DSC, J. Therm. Anal., 1993, 40, 483; Joshi, H.N.; Topp, E.M. Hydration in Hyaluronic Acid and its Esters Using Differential Scanning Calorimetry, Int. J. Pharm. 1992, 80, 213; Ikada, Y., *et al*., Water in Mucopolysaccharides, ACS Symp. Ser., 1980, 127, 287; Průšová et al., An Alternative DSC Approach to Study Hydration of Hyaluranon, Carbohydrate Polymers 82 (2010) 498–503.

33.    Each of these publications used a different method to make direct measurements of the amount of water bound to hyaluronic acid, though most involved some form of differential scanning calorimetry. The differences in the methods used for these empirical determinations produced somewhat different results, but they are all similar, in the range of 0.36-0.86 g $H_2O$/g hyaluronic acid at moderate relative humidity. The studies reported measurements of both freezable (i.e., weakly bound water) and non-freezable water (water bound by relatively strong attractions such as hydrogen bonding, which interferes with the water's ability to form ice).

34.    The table below summarizes the results of these publications, all of which confirm that Defendant's claim that hyaluronic acid in the Products attracts/holds 1,000 times its weight in moisture/water is false:

///

| Publication | Water Source | Non-Freezable Water $(g_w/g_{HA})$ | Moles$_w$ / HA monomer | Freezable Bound Water $(g_w/g_{HA})$ | Method |
|---|---|---|---|---|---|
| Yoshida | Solvent | 0.5 g | ~11 | 0.5-1.8 g | DSC and NMR |
| Joshi | Solvent | 0.6 g | 13.4 ± 1.8 | n/a | DSC |
| Ikada | Solvent | 0.51 g | 11.5 | 0.59 g | DSC |
| Haxaire | Air | 0.35 g | 8 (at 70% RH) | n/a | IR Spectrometry |
| Davies | Solvent | 0.39 g | 9 | n/a | Ultrasound |
| Mlcoch | Solvent | 0.77-0.86 g | 17.2-19.1 | n/a | DSC |
| Jouon/Milas | Air | 0.5-0.8 g | 12-17 (at 88% RH) | ≤ 1.3 g at 100% RH | Thermogravimetry |
| Průšová | Solvent | 0.74-0.84 g | 16.5-18.7 | n/a | DSC |
| Kurane | Air | 0.17-0.35 g | 4 (at 61% RH) 8 (at 91% RH) | n/a | Thermogravimetry |

35.    If hyaluronic acid were capable of absorbing water in the amounts advertised, it would act as a desiccant, not a moisturizer. That is because, if it were that hygroscopic, the hyaluronic acid would tend to draw water *out* of the skin, thereby achieving the *opposite* effect as the one Defendant advertises.

36.    Therefore, Defendant's representations on the Hyaluronic Acid Products' packaging and on the Website (i.e., that (i) the product was an "instant skin hydrator" with "professional-grade Hyaluronic Acid"; (ii) the hyaluronic acid in the product "attracts up to 1,000 X its weight in moisture"; (ii) that the hyaluronic acid in the product "restores volume to sagging skin"; and/or (iii) the hyaluronic acid "holds 1,000 times its weight in water") are false.

**B.    Defendant Knowingly and Intentionally Falsely Advertise the Hyaluronic Acid Products.**

37.    The market for beauty and skin care is robust and continues to grow. Women increasingly have more disposable income, and thus are more likely to purchase more expensive brands, such as those sold by Defendant. Further, men increasingly are using beauty and skin care products. In addition, the ubiquity of social media has caused a surge in interest in looking young and camera-ready. Moreover, as the population ages, the interest in anti-aging products has grown.

38.    To take advantage of this growing market, Defendant has a tremendous incentive to falsely and deceptively advertise the Hyaluronic Acid Products, as these products tap into consumers' increasing concerns over aging and interest in hydration.

39.     Because of the interest in these kinds of products, Defendant is able to charge premium amounts for its pseudo-science. Thus, given that Defendant's profits will likely grow from selling over-priced products to a growing market for skin care products, Defendant has an incentive to continue to make false representations.

40.     As the party who formulated, manufactures, and sells the Hyaluronic Acid Products, Defendant had to know that its claims were false. Any scientist or person who viewed the claim would have quickly recognized that the ability of 1 gram of material to attract/retain/hold 1,000 times its weight in moisture/water is not credible. And if they did not recognize that the claim was false on its face, they would have realized it was false when formulating and working with the Hyaluronic Acid Products, because, if the claim were true, the hyaluronic acid being added to the Products would pull water out of the air and expand in volume by a factor of roughly 1,000. That does not occur, and Defendant necessarily witnessed that it did not occur. Further, any reasonably diligent person who looked for corroboration of the 1,000-times claim in scientific literature would have come across the publications cited above showing that hyaluronic acid does not attract and retain 1,000 times its weight in moisture. While there are publications that repeat this false claim, they are all hearsay; none of them report data to back the claim up. Accordingly, a reasonably diligent person who viewed the false 1,000-times claim in publications would have been on notice that the claim was spurious.

### C.     Plaintiff's Experiences

41.     Ms. Darrow is a consumer who is interested in beauty products. Approximately a year ago, in or around late 2020, she visited a Walgreens store in Alameda, California, where she was shopping for a moisturizing product. She saw the Advanced Clinicals Hyaluronic Acid Instant Hydrator a/k/a Hyaluronic Acid Body Cream, and read on the package that (i) the product was an "instant skin hydrator" with "professional-grade Hyaluronic Acid"; (ii) the hyaluronic acid in the product "attracts up to 1,000 X its weight in moisture"; and (iii) that the product "restores volume to sagging skin."

42.     Based on these representations, Ms. Darrow believed that the Product was capable of moisturizing and hydrating her skin. Accordingly, she decided to purchase the Product. She paid approximately $18.

43.     She repeatedly used the Product, but did not observe any improvement to her skin relative to other products she had used.

44.     Had Ms. Darrow known that the Hyaluronic Acid Hydrating Body Cream is incapable of attracting and retaining up to up to 1,000 X its weight in moisture, she would not have purchased it, or would have paid less for it.

45.     Ms. Darrow continues to want to purchase products that could help improve the appearance of her skin. She desires to purchase other cosmetic products from Advanced Clinicals, and regularly visits stores where Defendant's products are sold. Without purchasing and having the Products professionally tested or consulting scientific experts, Ms. Darrow will be unable to determine if representations that Defendant makes regarding the properties and features of its products are true. Ms. Darrow understands that the formulation of Defendant's Products may change over time or that Defendant may choose to market other products that contain misleading representations about the product. But as long as Defendant may use inaccurate representations about the capabilities of its products, then when presented with Defendant's advertising, Ms. Darrow continues to have no way of determining whether the representations regarding those capabilities are true. Thus, Ms. Darrow is likely to be repeatedly presented with false or misleading information when shopping and unable to make informed decisions about whether to purchase Defendant's products. She is therefore likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to utilize accurate representations regarding the actual capabilities of hyaluronic acid.

V.     CLASS ALLEGATIONS

A.     The Class

46.     Plaintiff seeks to represent a "Class" of persons, defined as: "All natural persons who, between January 26, 2018 and the present, purchased, in California, any Hyaluronic Acid Product."

47.     Excluded from the Class are Defendant, its affiliates, successors and assigns, officers and directors, and members of their immediate families.

48.     The Class is so numerous that joinder of all members is impracticable. The precise number of members in the Class is not yet known to Plaintiff, but she estimates that it is well in excess of 1,000 people.

49.     There are questions of law and fact that are common to the Class, including, but not limited to, the following:

- whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling and sale of the Hyaluronic Acid Products;

- whether Defendant represented that products in the Hyaluronic Acid Products have characteristics, benefits, uses or qualities that they do not have;

- whether Defendant misled class members by representing that the hyaluronic acid in the Hyaluronic Acid Products "attracts up to 1,000 X its weight in moisture";

- whether Defendant misled class members by representing that the hyaluronic acid in the Hyaluronic Acid Products "holds 1,000 times its weight in water";

- whether Defendant misled class members by representing that the hyaluronic acid in the Hyaluronic Acid Products is "professional-grade hyaluronic acid";

- whether Defendant misled class members by representing that the Hyaluronic Acid Products are "instant skin hydrator[s]";

- whether Defendant misled class members by representing that the hyaluronic acid in the Products will "restore volume to sagging skin";

- whether Defendant's nondisclosures and misrepresentations are material to a reasonable consumer;

- whether the nondisclosures and misrepresentations were likely to deceive a reasonable consumer in violation of the consumer protection statutes of California;

- whether Defendant was unjustly enriched;

- whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiff and the members of the Class;

- whether Plaintiff and the members of the Class are entitled to damages, restitution, and/or equitable or injunctive relief;

- whether Defendant breached its obligations to the Class;

- whether Defendant engaged in the alleged conduct knowingly, recklessly, or negligently;

- the amount of revenues and profits Defendant received and/or the amount of monies or other obligations lost by class members as a result of such wrongdoing;

- whether class members are entitled to injunctive relief and other equitable relief and, if so, what is the nature of such relief; and

- whether class members are entitled to payment of actual, incidental, consequential, exemplary, and/or statutory damages plus interest, and if so, what is the nature of such relief.

50.    Plaintiff's claims against Defendant are typical of the claims of the Class because she and all other members of the class purchased the Hyaluronic Acid Products with the same attendant advertising, warranties, and representations. With respect to the class allegations, Plaintiff was subjected to the exact same business practices and representations.

51.    Plaintiff will fairly and adequately protect the interests of the Class.

52.    Plaintiff has demonstrated her commitment to the case, has diligently educated herself as to the issues involved, and to the best of her knowledge does not have any interests adverse to the proposed class.

53. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

54. A class action is superior to other available methods for a fair and efficient adjudication of this controversy as many members of the proposed Class have damages arising from Defendant's wrongful course of conduct which would not be susceptible to individualized litigation of this kind, including, but not limited to, the costs of experts and resources that may be required to examine the business practices in question.

55. Given the relative size of damages sustained by the individual members of the Class, the diffuse impact of the damages, and homogeneity of the issues, the interests of members of the Class individually controlling the prosecution of separate actions is minimal.

56. There is no litigation already commenced for these class representatives, nor is there anticipated to be subsequent litigation commenced by other members of the Class concerning Defendant's alleged conduct. Consequently, concerns with respect to the maintenance of a class action regarding the extent and nature of any litigation already commenced by members of the Class are non-existent.

57. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this Class Action Complaint that would preclude its maintenance as a class action.

## VI.   CAUSES OF ACTION

<u>**First Cause of Action**</u>
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code § 1750, et seq.)**
**On Behalf of Plaintiff and the Class**

58. Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

59. This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, et seq. ("CLRA").

60. Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

61.     Plaintiff and other members of the Class are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

62.     The products that Plaintiff and similarly situated members of the Class purchased from Defendant are "goods" within the meaning of California Civil Code § 1761.

63.     By engaging in the actions, representations, and conduct set forth in this Class Action Complaint, Defendant has violated, and continues to violate, §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(5), Defendant represented that goods have approval, characteristics, uses, benefits, and qualities that they do not have. In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods and/or services it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(9), Defendant advertised goods with intent not to sell them as advertised.

64.     Specifically, Defendant's acts and practices caused Plaintiff and similarly situated consumers to falsely believe that (i) the product was an "instant skin hydrator" with "professional-grade Hyaluronic Acid"; (ii) the hyaluronic acid in the product "attracts up to 1,000 X its weight in moisture"; (iii) that the hyaluronic acid in the product "restores volume to sagging skin"; and/or (iv) "holds 1,000 times its weight in water."

65.     Defendant implied that the hyaluronic acid in the Product pulls water from the atmosphere into the user's skin, since the hyaluronic acid applied to the user's skin has only two water sources available—the user's skin and the atmosphere. If the Product pulled water from the user's skin, it would be a desiccant (i.e., drying agent), not a moisturizer. So when Defendant advertised that the hyaluronic acid would "attract up to 1,000 X its weight in moisture" or "holds 1,000 times its weight in water" to moisturize skin, a reasonable consumer would understand that Defendant was communicating that it pulled the water from the air.

66.     Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). Plaintiff's remedies at law are inadequate, or will be inadequate, to cure and prevent Defendant's ongoing conduct. Such misconduct by Defendant, unless and until enjoined and

restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the Consumer Legal Remedies Act alleged to have been violated herein.

67.     More than thirty days prior to the filing of the original Class Action Complaint, Ms. Darrow gave notice and demand that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Defendant failed to do so in that, among other things, it failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and provide that remedy. Accordingly, Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), on behalf of herself and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

68.     Plaintiff requests that this Court award her costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

### Second Cause of Action
**(False Advertising, Business and Professions Code § 17500, et seq. ("FAL"))**
**On Behalf of Plaintiff and the Class**

69.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

70.     Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, Defendant has made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of Hyaluronic Acid Products.

71.     Defendant has made representations and statements (by omission and commission) that lead reasonable consumers to believe: that (i) the product was an "instant skin hydrator" with

"professional-grade Hyaluronic Acid"; (ii) the hyaluronic acid in the product "attracts up to 1,000 X its weight in moisture"; (iii) that the product "restores volume to sagging skin"; and/or (iv) "holds 1,000 times its weight in water." Defendant, however, deceptively failed to inform consumers that these representations are false.

72.     Plaintiff and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, paying less for the Hyaluronic Acid Products.

73.     Defendant's acts and omissions are likely to deceive the general public.

74.     Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, et seq. of the California Business and Professions Code.

75.     The aforementioned practices, which Defendant has used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

76.     Plaintiff seeks equitable relief, including restitution, with respect to her FAL claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in her other causes of action, in the event that such causes of action do not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under her other causes of action and will lack an adequate remedy at law, if the Court requires her to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's false and misleading representations as described in this Complaint, but the FAL does not require individualized proof of deception or injury by absent class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of

deception, reliance, and injury.'"). In addition, Plaintiff and the Class may be unable to obtain such relief under her other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite mens rea (intent, reckless, and/or negligence), because the FAL imposes no such mens rea requirement and liability exists even if Defendant acted in good faith.

77.     Plaintiff seeks, on behalf of herself and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

78.     Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. The acts complained of herein occurred, at least in part, within three (3) years preceding the filing of this Class Action Complaint.

79.     Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining Defendant from engaging in any such advertising and marketing practices in the future. Plaintiff's remedies at law are inadequate, or will be inadequate, to cure and prevent Defendant's ongoing conduct. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

80.     As a direct and proximate result of such actions, Defendant and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or

property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

<u>**Third Cause of Action**</u>
**(Fraud, Deceit, and/or Misrepresentation)**
**On Behalf of Plaintiff and the Class**

81.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

82.     Defendant's representations to Plaintiff and those similarly situated on the Website, on product packaging, on social media channels, and through its retail partner's stores were false. In particular, these representations were false: (i) the product was an "instant skin hydrator" with "professional-grade Hyaluronic Acid"; (ii) the hyaluronic acid in the product "attracts up to 1,000 X its weight in moisture"; (iii) that the product "restores volume to sagging skin"; and/or (iv) "holds 1,000 times its weight in water."

83.     Defendant knew that these representations were false when it made them. Defendant is a large cosmetic company. Accordingly, it chose the ingredients it incorporated in its products, and is fully aware of the properties and actual capabilities of those ingredients. Defendant is also aware of scientific research (or the lack thereof) regarding those ingredients. Further, Defendant tests its products on human skin, and such tests would have revealed the falsity of Defendant's representations. For example, there are multiple scientific publications addressing the ability of hyaluronic acid to bind water. These studies report that hyaluronic acid binds only about 1.5 times its weight in water, and does not attract water from the air. Also, if the claim that hyaluronic acid attracts/holds 1,000 times its weight in moisture/water were true, the chemists formulating the product would have seen dramatic hygroscopic activity when working with the material; it would have expanded in volume roughly 1,000 times upon exposure to the air. The fact that no such absorption or expansion occurred put Defendant on notice that the claim was false. Additionally, Plaintiff notified Defendant that its claims were false, and described the evidence above, as well as tests performed in conjunction with another lawsuit demonstrating that the claim hyaluronic acid attracts/holds 1,000 times its weight in moisture/water is false.

84.     Defendant further concealed, suppressed, and omitted material facts that would have revealed that the representations regarding hyaluronic acid were false and misleading.

85.     Defendant's misrepresentations and omissions were material at the time they were made. They concerned material facts that were essential to the analysis undertaken by Plaintiff and those similarly situated as to whether to purchase the Hyaluronic Acid Products.

86.     Plaintiff and those similarly situated reasonably relied to her detriment on Defendant's representations. Specifically, Plaintiff and those similarly situated purchased the Hyaluronic Acid Products because they believed Defendant's representations regarding hyaluronic acid. This reliance was reasonable because Plaintiff and those similarly situated reasonably expected that Defendant would have scientific substantiation for its claims.

87.     Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, not purchasing (or paying less for) the Hyaluronic Acid Products.

88.     Defendant had a duty to inform members of the Class at the time of their purchase the falsity of the following: that (i) the product was an "instant skin hydrator" with "professional-grade Hyaluronic Acid"; (ii) the hyaluronic acid in the product "attracts up to 1,000 X its weight in moisture"; (iii) that the product "restores volume to sagging skin"; and/or (iv) "holds 1,000 times its weight in water." In making these representations and omissions, Defendant breached its duty to class members. Defendant also gained financially from, and as a result of, its breach.

89.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, purchase Hyaluronic Acid Products.

90.     As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiff and those similarly situated have suffered damages. In particular, Plaintiff seeks to recover on behalf of herself and those similarly situated the amount of the price premium they paid (i.e., the difference between the price consumers paid for the Hyaluronic Acid Products and

the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

91.    Defendant's conduct as described herein was willful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiff and those similarly situated.

**Fourth Cause of Action**
**(Negligent Misrepresentation)**
**On Behalf of Plaintiff and the Class**

92.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

93.    In marketing and selling the Hyaluronic Acid Products to consumers, Defendant made the following false and misleading statements: that (i) the product was an "instant skin hydrator" with "professional-grade Hyaluronic Acid"; (ii) the hyaluronic acid in the product "attracts up to 1,000 X its weight in moisture"; (iii) that the product "restores volume to sagging skin"; and/or (iv) "holds 1,000 times its weight in water." Defendant, however, deceptively failed to inform consumers that all of these statements are false. Defendant also deceptively failed to inform consumers that the hyaluronic acid in the Hyaluronic Acid Products is already saturated by the time it is applied to the user's skin, and that to the extent it is even capable of absorbing moisture, it would absorb moisture from the user's skin, not from the atmosphere.

94.    These representations were material at the time they were made. They concerned material facts that were essential to the decision of Plaintiff and those similarly situated regarding how much to pay for the Hyaluronic Acid Products.

95.    Defendant made identical misrepresentations and omissions to members of the Class regarding the Hyaluronic Acid Products.

96.    Defendant should have known its representations were false, and had no reasonable grounds for believing them to be true when they were made. Defendant is a large cosmetics company. Accordingly, it chose the ingredients it incorporated in its products, and is fully aware of the properties and actual capabilities of those ingredients. Defendant is also aware

of scientific research and clinical testing (or the lack thereof) regarding those ingredients and Products. Further, Defendant tests its products on human skin, and such tests would have revealed the falsity of Defendant's representations.

97.     By and through such negligent misrepresentations, Defendant intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant negligently induced Plaintiff and those similarly situated, without limitation, to purchase the Hyaluronic Acid Products at the price they paid.

98.     Plaintiff and those similarly situated reasonably relied on Defendant's representations. Specifically, Plaintiff and those similarly situated paid as much as they did for Hyaluronic Acid Products because of the false and misleading representations described herein.

99.     Because they reasonably relied on Defendant's false representations, Plaintiff and those similarly situated were harmed in the amount of the price premium they paid (i.e., the difference between the price consumers paid for Hyaluronic Acid Products and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

**Fifth Cause of Action**
**(Unfair, Unlawful and Deceptive Trade Practices,**
**Business and Professions Code § 17200, et seq.)**
**On Behalf of Plaintiff and the Class**

100.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

101.     Within four years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Defendant has engaged, and continues to engage, in unfair, unlawful and deceptive trade practices in California by carrying out the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint. In particular, in connection with the marketing of the Hyaluronic Acid Products, Defendant has engaged, and continues to engage, in unfair, unlawful and deceptive trade practices by, without limitation, the following:

a.     falsely representing to Plaintiff and those similarly situated that the hyaluronic acid in the Hyaluronic Acid Products is an "instant skin

hydrator" that contains "professional-grade Hyaluronic Acid";

b.      falsely representing to Plaintiff and those similarly situated that the hyaluronic acid in the Hyaluronic Acid Products "attracts up to 1,000 X its weight in moisture";

c.      falsely representing to Plaintiff and those similarly situated that the hyaluronic acid in the Hyaluronic Acid Product "holds 1,000 times its weight in water";

d.      falsely representing to Plaintiff and those similarly situated that the hyaluronic acid in Defendant's products "restores volume to sagging skin";

e.      engaging in fraud and negligent misrepresentation as described herein;

f.      violating the CLRA as described herein; and

g.      violating the FAL as described herein.

102.      Plaintiff and those similarly situated relied to their detriment on Defendant's unfair, deceptive and unlawful business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation, paying less for the Hyaluronic Acid Products.

103.      Defendant's acts and omissions are likely to deceive the general public.

104.      Defendant engaged in these unfair practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

105.      The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provides an unlawful advantage over Defendant's competitors as well as injury to the general public.

106.      As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiff and the Class lost the amount of the price

premium they paid (i.e., the difference between the price consumers paid for Hyaluronic Acid Products and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis;

107.   Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent and unlawful.

108.   Plaintiff seeks, on behalf of those similarly situated, equitable relief, including restitution for the premium and/or the full price that they and others paid to Defendant as result of Defendant's conduct. Plaintiff and the Class lack an adequate remedy at law to obtain such relief with respect to her "unfairness" claims in this UCL cause of action, because there is no cause of action at law for "unfair" conduct.

109.   Plaintiff also seeks equitable relief, including restitution, with respect to the UCL unlawfulness claims for violations of the CLRA, FAL and her UCL deceptiveness claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in her other causes of action, in the event that such causes of action do not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under her other causes of action  and will lack an adequate remedy of law, if the Court requires her to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (9th Cir 2011) (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiff and the Class may be unable to obtain such relief under her other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite mens rea

(intent, reckless, and/or negligence), because the UCL imposes no such mens rea requirement and liability exists even if Defendant acted in good faith.

110.    Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to prohibit Defendant from offering the Hyaluronic Acid Products within a reasonable time after entry of judgment, unless Defendant modifies the product packaging, Website and other marketing materials to remove the misrepresentations and to disclose the omitted facts. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which it was not entitled. Plaintiff, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**Sixth Cause of Action**
**(Quasi-Contract Claim for Restitution (Unjust Enrichment))**
**On Behalf of Plaintiff and the Class**

111.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

112.    Plaintiff and the Class members conferred a benefit on the Defendant by purchasing Hyaluronic Acid Products.

113.    Defendant has been unjustly enriched in retaining the revenues from these purchases of Hyaluronic Acid Products. Retention of those revenues is unjust and inequitable because Defendant falsely represented: that (i) the product was an "instant skin hydrator" with "professional-grade Hyaluronic Acid"; (ii) the hyaluronic acid in the product "attracts up to 1,000 X its weight in moisture"; (iii) that the product "restores volume to sagging skin"; and/or (iv) "holds 1,000 times its weight in water." These representations caused injuries to Plaintiff and

those similarly situated because they paid a price premium due to the misleading labeling and advertising connected to the Hyaluronic Acid Products.

114.   Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and those similarly situated is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

115.   Plaintiff, therefore, seeks an order requiring Defendant to make restitution to her and other members of the Class. This remedy is pleaded as an alternative remedy, to the extent that Plaintiff's remedies at law are inadequate to cure and prevent Defendant's ongoing conduct.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf all others similarly situated, respectfully requests that this Court enter a judgment against Defendant and in favor of Plaintiff, and grant the following relief:

A.   Determine that this action may be maintained as a Class action with respect to the Class identified herein and certify it as such under Rule 23 of the Federal Rules of Civil Procedure or alternatively certify all issues and claims that are appropriately certified, and designate and appoint Plaintiff as the Class Representative, and Plaintiff's counsel as Class Counsel;

B.   Declare, adjudge and decree the conduct of the Defendant as alleged herein to be unlawful, unfair and/or deceptive;

C.   Enjoining Defendant, directly or through any company, corporation, partnership, subsidiary, division, trade name, or other device, in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of any product containing hyaluronic acid, from making a representation about the product's or ingredient's ability to hold, retain, or absorb water in any quantity and from any source unless, at the time the representation is made, Defendant possesses and relies upon competent and reliable evidence, that, when considered in light of the entire body of relevant and reliable evidence, is sufficient in quantity and quality based on standards generally accepted in the relevant fields, to support such representation. For the purposes of this paragraph, "competent and reliable evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the

relevant area, that have been conducted and evaluated in an objective manner by qualified persons, using procedures generally accepted in the profession to yield accurate and reliable results.

E.    Enjoining Defendant, directly or through any company, corporation, partnership, subsidiary, division, or other device, in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of any cosmetic product, to not provide to others the means and instrumentalities with which to make any representation prohibited by Paragraphs C and D above. For the purposes of this paragraph, "means and instrumentalities" means any information, including, but not necessarily limited to, any advertising, labeling, or promotional, sales training, or purported substantiation materials, for use by trade customers in their marketing of such product or service.

F.    Award Plaintiff and the Class actual, compensatory damages, as proven at trial;

G.    Award Plaintiff and the Class restitution of all monies paid to Defendant as a result of unlawful, deceptive, and unfair business practices;

H.    Award Plaintiff and the Class exemplary damages in such amount as proven at trial;

I.    Award Plaintiff and the Class reasonable attorneys' fees, costs, and pre- and post-judgment interest; and

J.    Award Plaintiff and the Class such other further and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## VIII.    JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

Dated: January 26, 2022.

**GUTRIDE SAFIER LLP**

_/s/ Anthony J. Patek /s/_
Seth A. Safier (State Bar No. 197427)
 seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
 marie@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
 anthony@gutridesafier.com

100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*